# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ATLAS IP, LLC, a Florida Limited Liability Corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 15 C 10744 |
| v. | ) ) | Judge Sharon Johnson Coleman |
| CITY OF NAPERVILLE, an Illinois Municipality, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Atlas IP, LLC ("Atlas"), filed a complaint against the City of Naperville, Illinois, ("Naperville"), alleging infringement of U.S. Patent No. 5,371,734 ("the '734 patent"). Naperville moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim [17]. Naperville also moves for leave to submit supplemental authority [26] in the form of a Memorandum Opinion and Order entered by the Honorable Milton I. Shadur on May 17, 2016, dismissing with prejudice the Second Amended Complaint in *Atlas IP, LLC v. Exelon Corp.,* 1:15-cv-10746. This Court grants the motion for supplemental authority and considers that case and the parties arguments regarding its relevance to the motion at bar. For the reasons stated below, this Court grants Naperville's Motion to Dismiss.

**Background**

Atlas is the owner by assignment of the patent-in-suit, the '734 patent, which describes a medium access control ("MAC") protocol for a wireless network, preferably radio frequency (RF), LAN-type network communications among a plurality of resources, such as battery powered portable computers." The complaint presents claim 1 of the '734 patent as a representative claim. It reads:

1

> A communicator for wirelessly transmitting frames to and receiving frames from a[t] [sic] least one additional communicator in accordance with a predetermined medium access control protocol, the communicators which transmit and receive the frames constituting a Group, each communicator including a transmitter and a receiver for transmitting and receiving the frames respectively, the medium access control protocol controlling each communicator of the Group to effect predetermined functions comprising:
>
> designating one of the communicators of the Group as a hub and the remaining […]communicators of the Group as remotes:
>
> the hub establishing repeating communication cycles, each communication cycle having intervals during which the hub and the remotes transmit and receive frames;
>
> the hub transmitting cycle establishing information to the remotes to establish the communication cycle and a plurality of redeterminable intervals during each communication cycle, the intervals being ones when the hub is allowed to transmit frames to the remotes, when the remotes are allowed to transmit frames to the hub and when each remote is expected to receive a frame from the hub;
>
> the hub transmitting a frame containing the cycle establishing information which establishes both an outbound portion of the communication cycle when the hub transmits frames to the remotes and an inbound portion of the communication cycle when the remotes transmit frames to the hub, the frame containing the cycle establishing information also establishing the predetermined intervals during the outbound and inbound portions of the communication cycle when each remote is allowed to transmit and receive;
>
> the remotes powering off their transmitters during times other than those intervals when the remote is allowed to transmit frames to the hub, by using the cycle establishing information transmitted from the hub; and
>
> the remotes powering off their receivers during times other than those intervals when the remote is expected to receive a frame from the hub, by using the cycle establishing information transmitted from the hub. (Dkt. 1, Compl. at ¶ 4).

Naperville owns the Naperville Department of Public Utilities ("NDPU"), which provides the municipality's electric utility infrastructure. Prior to January 2013, NDPU had installed a network of REX2 residential smart meters supplied by Elster Metering Ltd. ("Elster"), which communicate with an Elster EnergyAxis Gatekeeper. The smart meters and the Gatekeeper communicate over the licensed 902-928 MHz band. The smart meters and the Gatekeeper are the "accused products" according to the complaint.

According to the complaint, the accused products form a group of at least one device operating in remote mode (smart meter), and one device operating in base mode (Gatekeeper). (*Id.* at ¶ 11). The Gatekeeper allegedly transmits one frame of data to a smart meter that initiates a communication session, and which allows the smart meter to calculate the duration of the communication session and its constituent intervals before the smart meter transmits to the Gatekeeper during the communication session. (*Id.* at ¶ 12). The complaint describes some of the functionality of the accused products, including that "there are intervals during which the Gatekeeper and the smart meter transmit and receive frames[,]"that a "smart meter has the ability to power off its transmitter during times other than those when it is transmitting data [,]" and that a "smart meter has the ability to power off its receiver during times other than those when it is receiving data." (*Id.* at ¶¶ 16-18). Atlas alleges that NDPU's smart meters and access points described in the complaint infringed the claims of the '734 patent before its expiration. (*Id.* at ¶ 24).

**Legal Standard**

On December 1, 2015, amendments to the Federal Rules of Civil Procedure took effect, abrogating the Forms Appendix, including Form 18 which previously provided the minimum standard for pleading infringement in patent cases. *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.,* 681 F.3d 1323, 1334 (Fed. Cir. 2012). Although Atlas' complaint was filed on November 30, 2015, the parties agree that the now familiar *Iqbal* and *Twombly* standard for evaluating the sufficiency of complaints challenged pursuant to Rule 12(b)(6) applies to this case.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive dismissal, the allegations in the complaint must be facially plausible and provide the defendant with fair notice of the basis of the claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955,

167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. When considering the motion, the Court accepts as true all well pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

**Discussion**

Naperville moves to dismiss the complaint pursuant to Rule 12(b)(6), arguing that Atlas fails to state a claim for infringement. Naperville contends that the complaint fails to allege sufficient facts indicating how the accused products infringed on the '734 patent, which claims of the patent are at issue, and whether Naperville's alleged infringement was direct, indirect, literal, or under the doctrine of equivalents.

Plaintiffs need only plead facts, not legal theories, in their complaints. *Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 701 (7th Cir. 2014) (citing *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 742 (7th Cir. 2010)). As Atlas points out, there are no allegations in the complaint to support any legal theory of infringement other than direct infringement. Thus, this Court will review whether the complaint adequately states a claim for direct infringement.

Recently, a nearly identical complaint filed in this district by Atlas against Exelon was dismissed with prejudice. *Atlas IP, LLC v. Exelon Corp.,* No. 1:15-cv-10746 (N.D. Ill. May 17, 2016). In that case, Judge Shadur found the Second Amended Complaint failed to describe how the accused products practiced the frames and power elements of the representative claim. *Id.* at 11. This Court, however, is mindful of three issues with respect to the application of the *Exelon* case here. First, as Atlas points out there are different products at issue. The relevance of the differences in the accused products, if any, is belied by the fact that the complaints are nearly identical. Second, in *Exelon,* the court notes that the Federal Circuit has reiterated that a complaint does not have to

4

"describe precisely how each element of the asserted claims are being practiced" or "even identify which claims it asserts are being infringed" (*Id.* at 8, citing *See In re Bill of Lading (R + L Carriers)*, 681 F.3d at 1335, citing *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356-57 (Fed. Cir. 2007); *see also K-Tech Telecomm., Inc. v. Time Warner Cable, Inc.*, 714 F.3d 1277, 1283-87 (Fed. Cir. 2013)), but then goes on to require Atlas to do just that or face dismissal with prejudice. Third, Atlas has appealed dismissal of its complaint in *Exelon* to the Federal Circuit, arguing that the district court's construction of certain claims were incorrect and premature.

Even if this Court were to agree with Atlas that the district court in *Exelon* engaged in premature claim construction in order to find amendment to the complaint futile, dismissing that case with prejudice, this Court must consider that "[t]o establish literal infringement, every limitation set forth in a claim must be found in an accused product exactly" (*Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995)), and to establish infringement under the doctrine of equivalents the accused product must contain "an equivalent for each limitation not literally satisfied" (*Wi-Lan, Inc. v. Apple, Inc.*, 811 F.3d 455, 463 (Fed. Cir. 2016)). Applying the ordinary analysis of *Twombly/Iqbal*, then Atlas must plead that every limitation, or equivalent thereof, in the representative claim can plausibly be found in an accused product. The complaint fails to allege how the accused products practice, or contain an equivalent of, each limitation of representative claim 1.

In this case, the allegations in the complaint are deficient in two respects. First, the "powering off" limitation is alleged in the complaint in the conclusory allegation that "a smart meter has the ability to power off" without any other factual support. This deficiency is underscored by a lack of any allegation that the accused smart meter powers off or has the ability to power off "by using the cycle establishing information transmitted from the hub," which is the other part of the "powering off" claim limitation. Additionally, the "frame" limitation is alleged only that "the Gatekeeper transmits at least one frame of data to a smart meter…". This allegation, too, is far too

5

conclusory to survive dismissal under *Twombly/Iqbal. See Macronix Int'l Co., Ltd. v. Spansion Inc.,* 4 F.Supp.3d 797, 804 (E.D. Va. 2014) (finding that for direct infringement it is insufficient under *Twombly/Iqbal* to "simply allege[] that each element of a cited claim is infringed and then parrot the claim language for each element"); *Bender v. LG Electronics U.S.A., Inc.*, 2010 U.S. Dist. LEXIS 33075, (N.D. Cal. Mar. 11, 2010) ("Bender must do more than allege conclusorily the means by which Defendants are infringing on his '188 Patent and provide fair notice to Defendants of the specific infringements alleged).[1]

**Conclusion**

Based on the foregoing, this Court grants Naperville's motion to dismiss [17]. Atlas is allowed 21 days from entry of this Order to file an amended complaint.

IT IS SO ORDERED.

ENTERED:

Dated: July 19, 2016

SHARON JOHNSON COLEMAN
U.S. District Court Judge

---

[1] Both *Macronix* and *Bender* were decided prior to the change in the Federal Rules of Civil Procedure abrogating Form 18.